Filed 4/30/26  In re Joseph S. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Joseph S., a Person Coming Under the Juvenile Court Law. | B350991 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>Crystal S.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20LJJP00058A) |

APPEAL from an order of the Superior Court of Los Angeles County.  Stephanie Davis, Judge.  Affirmed.

John P. McCurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Courtney Fisher, Deputy County Counsel, for Plaintiff and Respondent.

_____

**INTRODUCTION**

Crystal S. (Mother) asserts the trial court failed to comply with its initial inquiry obligations under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and California statutes furthering ICWA.  We affirm because substantial evidence supports the trial court's finding that ICWA did not apply as the trial court interviewed family elders among other extended family members.

**FACTUAL AND PROCEDURAL BACKGROUND**

**1.    Dependency proceedings**

The Los Angeles County Department of Children and Family Services (DCFS) filed a petition alleging that (1) J.S. (Father) perpetrated domestic violence against Mother while Mother failed to protect Joseph S. under both Welfare and Institutions Code section 300,[1] subdivisions (a) and (b); (2) Father's substance abuse and Mother's failure to protect from Father's substance abuse endangered Joseph; and (3) Mother's substance abuse endangered the child.  Joseph was one-week old when DCFS filed its petition.

We briefly summarize the procedural facts for context because ICWA is the only issue on appeal.  The trial court detained Joseph from Father at the detention hearing while releasing to Mother.  Mother was a minor when the case began, and she was also a dependent in her own dependency case.  Consistent with the parents' waiver of rights, under section 300, subdivision (b), the trial court found true the allegations that (1) Father engaged in domestic violence and Mother failed to

---

[1]    All further undesignated statutory citations are to the Welfare and Institutions Code unless otherwise noted.

protect Joseph from this domestic violence, and (2) Father's substance abuse placed Joseph at risk. After the disposition, Mother maintained custody of Joseph, and the trial court removed the child from Father.

Thereafter, DCFS filed two supplemental petitions. Under section 387, it alleged Mother did not comply with the juvenile court case plan, which placed Joseph at risk. Under a section 342 petition, DCFS alleged that Mother physically abused the child under both section 300, subdivisions (a) and (b); Mother cared for Joseph while under the influence of alcohol and failed to drug test; Mother placed Joseph in the care of a 10-year-old for an extended period; and Mother failed to appropriately feed Joseph. At the detention hearing for these supplemental petitions, the trial court detained Joseph from Mother. Joseph was placed with a nonrelative extended family member, Joanne M. At the adjudication of the supplemental petitions, Mother again waived her right to contest the amended petitions, and the court sustained amended allegations that Mother physically abused Joseph, Mother's alcohol use endangered her child, Mother inappropriately allowed a 10-year-old to care for Joseph, and Mother did not follow her case plan.

The trial court conducted a 12-month review hearing on June 17, 2022, where it terminated reunification services for Mother.

**2. ICWA facts and termination of parental rights**

We begin by summarizing DCFS's interviews with the parents before addressing the remaining inquiries, mostly in chronological order. On January 22 and 28, 2020, Mother twice denied that Joseph had Indian ancestry in interviews with DCFS while Father denied Indian ancestry on January 28, 2020.

On January 30, 2020, at the detention hearing, both Mother and Father filed forms denying Indian ancestry. DCFS reinterviewed both parents about Joseph's ancestry on February 11, 2020, and they again denied Indian ancestry. On September 21, 2022, Mother and Father again denied knowledge of Indian ancestry for Joseph. On December 20, 2022, Mother yet again denied knowledge of Indian ancestry, and DCFS could not reach Father. On April 17, 2023, Mother and Father reiterated still another time that Joseph had no Indian ancestry. Finally, on May 7, 2025, DCFS attempted to contact Mother and Father about ICWA, but could not reach either one.

Regarding DCFS's inquiry for other family members, in the detention report dated January 30, 2020, DCFS spoke to paternal aunt Maryjane A., paternal uncle Carlos A., and maternal aunt Perla S. regarding its dependency investigation. DCFS did not speak to these relatives about ICWA.

On January 22, 2020, DCFS spoke to the maternal grandmother and maternal grandfather as reflected in the detention report. While DCFS did not speak to maternal grandmother or maternal grandfather in this case about ICWA, in Mother's dependency case,[2] the maternal grandmother and

_____

[2] We grant DCFS's unopposed request for judicial notice. We take judicial notice of (1) the maternal grandmother's statement denying Native American ancestry in the ICWA form from Mother's dependency case, (2) the maternal grandfather's statement denying Native American ancestry on the same form, (3) the trial court's minute order noting the maternal grandparents' ICWA forms were filed, (4) two pages of a redacted detention report from Mother's dependency case, where maternal

4

maternal grandfather both indicated Mother had no Indian ancestry. The maternal grandparents also said their adult daughter Gema S., a maternal aunt to Joseph, knew of facts relating to Father's domestic abuse of Mother. DCFS did not interview Gema regarding the case generally or about ICWA. Maternal grandmother also stated that one of the maternal uncles, Beto, was homeless after the maternal grandmother had removed him from her home.

On January 30, 2020, the trial court found that ICWA had no application to this case.

In the March 6, 2020 jurisdiction/disposition report, Mother stated that she has six older siblings in Southern California.

On December 19, 2022, the trial court ordered DCFS to provide an update on ICWA. On December 28, 2022, DCFS filed a last minute report where it attempted to reinterview Mother and Father. Mother provided the name and phone number of maternal aunt Esmeralda G. DCFS called Esmeralda and left a voicemail, which was unreturned. Father's call went to voicemail, and he did not return the call. On January 19, 2023, the trial court found that DCFS was complying with ICWA by continuing to interview specific family members. The trial court also ordered DCFS to provide an updated ICWA report in the next section 366.26 report.

In the section 366.26 report filed on May 8, 2023, when DCFS inquired about ICWA, Father stated that the paternal

_____

grandmother denied Mother had Native American ancestry, and (5) three pages of a redacted jurisdiction report from Mother's dependency case where maternal grandparents denied Native American ancestry.

5

grandfather was in prison and that the paternal grandmother was deceased. Father also provided DCFS with paternal great grandmother's contact information.

In the same section 366.26 report, DCFS spoke with the paternal great grandmother who denied any Native American ancestry, and she also confirmed that the paternal grandfather was incarcerated. In an earlier interview, she stated that the paternal grandmother was deceased, which was consistent with Father's statement.

In the same report, when DCFS asked Mother about relatives who might have ICWA information, Mother again provided DCFS with the name and contact information of a maternal aunt, Esmeralda. DCFS again called Esmeralda and left a message, but she did not return the call. DCFS later followed up with text messages, and Esmeralda responded twice. Despite interacting with DCFS in the text conversation, Esmeralda did not answer DCFS's questions regarding ICWA.

On May 19, 2023, the trial court reviewed the ICWA information in the section 366.26 report, and again found that ICWA did not apply to Joseph.

On September 18, 2023, the trial court ordered DCFS to provide an update on its ICWA investigation.

In a status review report, on November 20, 2023, Joseph's caregiver, Joanne M., said she had no information regarding whether Joseph had any Indian ancestry. She reiterated this point in May of 2024 and again in May of 2025.

On December 15, 2023, the trial court again ordered an updated ICWA report and again reiterated that ICWA did not apply to Joseph.

6

On March 27, 2024, DCFS filed a last minute report indicating it had no new ICWA information.

On April 15, 2024, the trial court again found that ICWA did not apply.

On May 28, 2024, DCFS filed a status review report summarizing its previous ICWA investigation.

On December 13, 2024, the trial court again ordered DCFS to update its ICWA investigation in the next report, focusing on new ICWA information since the April 15, 2024 hearing.

On March 13, 2025, the trial court again found ICWA did not apply, and referenced its previous findings on April 15, 2024, December 15, 2023, and May 19, 2023.

On May 27, 2025, DCFS filed a status review report, which included an update on ICWA. DCFS also spoke to Joanne M.'s son, who denied having any ICWA information.

On May 30, 2025, DCFS filed a last minute report indicating it had no new information regarding ICWA.

On June 13, 2025, the trial court again found that ICWA did not apply and ordered DCFS to provide another ICWA update in the next report.

In an informational report filed on September 25, 2025, DCFS again noted there was no new ICWA information.

At the October 14, 2025 section 366.26 hearing, the court again found ICWA did not apply. The trial court then terminated parental rights.

Mother appealed on December 12, 2025.

## DISCUSSION

In her opening brief, Mother contends that the trial court's initial ICWA inquiry into Joseph's maternal grandmother, maternal grandfather, paternal aunt Maryjane, paternal uncle

7

Carlos, maternal aunt Emeralda, maternal aunt Gema, and maternal aunt Perla was deficient. Then, after reviewing DCFS's respondent's brief, Mother noted the information in DCFS's request for judicial notice "likely show[s] that the Department's ICWA inquiry as to the maternal side of the family was adequate." We affirm as the trial court's finding that ICWA did not apply to this case is supported by substantial evidence.

### 1. ICWA principles

ICWA requires that "[i]n any involuntary proceeding in a [s]tate court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe" of the proceedings and the right to intervene. (25 U.S.C. § 1912(a).) Relatedly, California law requires notice to the child's parent, Indian custodian, and the child's tribe if there is "reason to know . . . that an Indian child is involved" in the proceeding. (§ 224.3, subd. (a).) Juvenile courts and child welfare agencies both "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300" could be or was filed may be an Indian child. (§ 224.2, subd. (a); *see In re Isaiah W.* (2016) 1 Cal.5th 1, 14.)

At a party's initial appearance, the court must inquire if a party "know[s] or ha[s] reason to know that the child is an Indian child." (§ 224.2, subd. (c).) Additionally, whenever a child welfare agency takes a child into temporary custody, it must ask of a nonexclusive group that includes the child, the parents, and extended family members "whether the child is, or may be, an Indian child." (*Id.*, subd. (b).) Extended family members include adults who are the child's grandparent, aunt or uncle, brother or

8

sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

As our Supreme Court explained, "section 224.2 'does not require the [child welfare] agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries.' " (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1140.) "Agencies are already tasked with investigating the circumstances underlying the child's removal and identifying and locating the child's extended family members [citation]; it is a rather simple task to ask those family members about Indian ancestry in this process." (*Id.* at p. 1143.) The Supreme Court agreed with the appellate court's characterization of this duty as " 'slight and swift.' " (*Ibid.*)

"If the [juvenile] court makes a finding that proper and adequate further inquiry and due diligence . . . have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2).) We review the juvenile court's ICWA findings for substantial evidence. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)

## 2. The trial court's ICWA finding is supported by substantial evidence

Father concedes that the initial ICWA inquiry for Mother's side of the family "likely" is "adequate." We agree substantial evidence supports this inquiry. Initially, both parents denied any Native American ancestry. In addition, both maternal grandparents denied any Native American ancestry in the related dependency case where Mother was a dependent, and the

trial court was free to rely on this information.  (*In re C.R.* (2025) 112 Cal.App.5th 793, 801.)  Moreover, the maternal grandparents were the only extended family members in the "older generation[]" on the maternal side family, and would have the best information about family ancestry.  (*In re C.L.* (2025) 116 Cal.App.5th 53, 70.)  As the Supreme Court noted, prior discrimination may " 'leav[e] only the older family members or extended family members with knowledge of' Indian ancestry.  [Citation.]  Parents may simply be estranged from, or have an unfavorable relationship with, extended family." (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1146.)  Here, the maternal grandparents would have the best information regarding potential Native American ancestry, and DCFS interviewed them.  The only remaining maternal family members that Father identifies are three maternal aunts.  Given that the grandparents are family elders above the maternal aunts in the family tree, the trial court's ruling regarding ICWA on the maternal side of the family finds support in the record.  This is particularly true here as the Mother is a sibling of the three aunts, and Mother denied any Native American ancestry as well.

Regarding the paternal side of the family, Mother points to DCFS's failure to interview paternal uncle Carlos and paternal aunt Maryjane.  However, DCFS spoke to the available elder in family as paternal great grandmother denied Native American ancestry.  Regarding the paternal grandparents, paternal grandmother passed away and paternal grandfather was in prison.  By speaking to the paternal great grandmother, DCFS spoke to a relative above the paternal aunt and uncle in the family tree.  (*In re C.L.*, *supra*, 116 Cal.App.5th at p. 70.)  They

10

also spoke to Father who is on the same level of the family tree as the paternal aunt and uncle.

Finally, we note that the DCFS inquiry here, while sufficient, included excessive repetition. Here, Mother was asked at least eight times whether ICWA applied to the case, and DCFS reached out to her a ninth time to ask. Father was asked about ICWA at least five times, and DCFS attempted to ask him about ICWA at least two other times. The caregiver even denied knowledge of ICWA three times. As DCFS strives to understand the legal obligations under the developing authority interpreting ICWA, it should not confuse a repetitive, overly time-consuming inquiry with a thorough one.

In summary, we find substantial evidence supports the trial court finding that ICWA did not apply to Joseph. In making this ruling, we acknowledge disagreement with *In re Claudia R.* (2025) 115 Cal.App.5th 76. Our division previously noted its disagreement in *In re K.G.* (2025) 117 Cal.App.5th 379, 381 because *Claudia R.* places additional burdens on DCFS. Our opinion here is consistent with the view previously expressed by our division.

11

## DISPOSITION

The juvenile court's section 366.26 order terminating parental rights is affirmed.


VIRAMONTES, J.


WE CONCUR:


STRATTON, P. J.


SCHERB, J.